EXHIBIT 1

TO

VERIFIED COMPLAINT *IN REM*

DECLARATION OF ADRIENNE MARTINEZ

## DECLARATION OF ADRIENNE MARTINEZ

## IN SUPPORT OF COMPLAINT

I, Adrienne Martinez, provide the following information under the penalty of perjury, as provided by 28 U.S.C. § 1746, and declare that the following is true and correct to the best of my knowledge, information and belief.

**A.  Declarant's Background**

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to Nashville, Tennessee.  I have been a Special Agent since 2018. Prior to my employment with ATF, I was a police officer in Sterling, Illinois for five years. I have received training for conducting investigations into violations of Federal firearms laws, the Controlled Substances Act, and other violations of Federal law, including gang, racketeering, and violence-related offences.

**B.  Items Sought for Forfeiture**

2.      Pursuant to 18 U.S.C. § 981(a)(1)(C), the United States seeks the forfeiture of $19,906 United States currency ("Defendant Property") because it is property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 922(l) (unlawful importation of firearms) and 18 U.S.C. § 924(n) (firearms trafficking).

**C.  Basis of Information**

3.      The information in this Declarant was obtained through my personal observations, training and experience, information gathered during interviews of and conversations with civilians and other law enforcement officers, documents submitted by claimants, and written reports and investigations conducted by other law enforcement officers. I have not included every item of information known to me concerning the Defendant Property and the facts

2

surrounding this Declaration, but only those relevant to a determination that the Defendant Property is subject to forfeiture.

**D.      Background Facts**

4.      Dennis Ferrer-Gonzales and named coconspirators were indicted on charges of federal firearms trafficking and money laundering on or about August 8, 2022. See *United States v. Salgado-Velasquez, et al.* Case No. 3:22-cr-00266 (M.D. Tenn.). The charged conspiracies spanned from at least December of 2020 and continued through at least the date of the indictment.

5.      The conspiracy involved, among other things, the use of MoneyGram International, Inc. to send money to third parties to facilitate the purchase machine guns from a dealer, Foxtrot Tactical Shop, located in Texas. The dealer would in turn cause shipments of the weapons via DHL to members of the conspiracy, including Ferrer-Gonzalez, under fictitious names. As part of the conspiracy, Ferrer-Gonzalez and coconspirators sold the weapons in the Middle District of Tennessee for cash.

6.      A more detailed statement of the conspiracy and some of evidence known to law enforcement is contained in my Statement in Support of an Application for A Search Warrant (Case No. 22-mj-4261). A true and correct copy of that statement is attached hereto as Exhibit 1 and incorporated herein by reference.

*Search of Ferrer-Gonzalez's Residence and Discovery of Defendant Property*

7.      On August 11, 20222, in conjunction with arrest warrants issued on the Indictment described above, ATF Special Agents executed a federal search warrant at a residence located at 4628 Long Branch in Antioch, Tennessee. Dennis Ferrer-Gonzalez and his girlfriend, J.O., lived at the residence.

3

8. During the search, ATF Special Agents recovered multiple cell phones, firearms accessories, and United States Currency. In the search of the room identified as the room belonging to J.O. and Ferrer-Gonzalez, agents located a large volume of loose cash.

9. A smaller amount of cash was sitting on a table in plain view. Most of the cash was contained in a bag with multiple empty rifle-style magazines and two Glock 9mm magazines. The money was seized. It was later counted at a branch of Regions Bank in Franklin, Tennessee. The cash totaled $19,906 in United States currency, which is identified herein as the Defendant Property.

### Interview of J.O.

10. ATF Special Agents interviewed J.O. incident to the search. J.O. confirmed that the cash in the bedroom belonged to Ferrer Gonzalez. J.O. stated that she did not know where it came from, and she stated that Ferrer-Gonzalez brings cash home.

11. J.O. confirmed that Ferrer-Gonzalez uses two cell phones, which were recovered in the search. As previously stated in Exhibit 1, based upon my training and experience, firearms traffickers will often make use of multiple cell phones or rotate cell phones to thwart efforts by law enforcement to intercept calls.

### Interview of Ferrer-Gonzalez

12. Ferrer-Gonzalez was also interviewed by ATF Special Agents. Although Ferrer-Gonzalez admitted to being involved in the conspiracy to traffic Glock switches and to sending MoneyGram wires for a coconspirator, he denied that the Defendant Property represented illegal proceeds. He claimed that the money came from wages he earned working for his mother's business.

*Phone Analysis*

13.     A phone recovered in the search of Ferrer-Gonzalez's Residence, MSISDN associated to phone 1-323-713-5848, was processed pursuant to a search warrant.  In the review of information on the cell phone, ATF Agents located images and videos depicting suspected narcotics, suspected Glock auto sears, and photographs depicting what appears to be large amounts of United States Currency. ATF Agents also located photographs of what appeared to be MoneyGram transaction related information and DHL shipping labels.

*Ferrer-Gonzalez's Claim*

14.     Follow up review of information submitted by Ferrer-Gonzalez in the administrative forfeiture proceeding does not support his claims that the money was the result of legitimate income. Based upon the tax returns he submitted, the amount of cash seized exceeds his combined gross-reported income for both tax years 2020 and 2021. Ferrer-Gonzalez, according to documents he supplied, claimed only $2465 in gross income in 2020 and $3027 in 2021. Based upon the information Ferrer-Gonzalez provided, his reported income would not support the possession of the amount of cash seized in the search described-above.

E.     **Conclusion**

16.     Based on the foregoing, my experience and training, and the facts of this investigation, I believe the facts support a reasonable belief that the Defendant Property is property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 922(l) (unlawful importation of firearms) and 18 U.S.C. § 924(n) (firearms trafficking).

17.     The Defendant Property is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

16.     The Defendant Property is, therefore, forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A).

I declare under the penalty of perjury as provided by 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Special Agent, Adrienne Martinez
Bureau of Alcohol, Tobacco, Firearms and Explosives

6

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN THE MATTER OF THE SEARCH OF:
4628 LONG BRANCH, ANTIOCH,
TENNESSEE, 37013

Case No. ___22-mj-4261_____

**Filed Under Seal**

## STATEMENT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Adrienne Martinez, a Special Agent (SA) with the Bureau of Alcohol, Tobacco,

Firearms, and Explosives (ATF), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and

Explosives (ATF) and have been so employed since 2018. As an ATF Agent, I have attended

training at the Federal Law Enforcement Training Center in Brunswick, Georgia. Prior to my

employment with ATF, I was a police officer in Sterling, Illinois, for the Sterling Police

Department for five (5) years. I have been trained in conducting investigations into violations of

the Federal firearms laws, the Controlled Substances Act, and other violations of Federal law,

including gang, racketeering, and violence-related offenses.

2.      As a result of my assignments, I have received specialized training in the field of

firearms identification and investigation. I am familiar with the methods of operation employed by

firearms traffickers operating at the local, state, national and international levels, including those

involving the distribution, storage, and transportation of illegal firearms. Additionally, I am

familiar with the techniques that traffickers use to collect the money that is received as proceeds

of those activities. I am aware that individuals or organizations involved in illegal activity

EXHIBIT 1

commonly use cellular telephones in furtherance of those crimes. I am also aware that these individuals or organizations often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection. Furthermore, cellular telephones are often utilized in conjunction with fictitious names in attempts to remain anonymous. I am aware that individuals or organizations involved in illegal activity commonly use vehicles to transport illegal items in furtherance of those crimes. Furthermore, vehicles utilized are not always registered to the subject(s) involved in committing the crimes in order to further prevent detection.

3.       The facts in this affidavit come from my personal observations, my training and experience, information obtained from other agents, informants, suspects, co-conspirators, and/or local law enforcement officers. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of the ATF and other law enforcement agencies, and from my review of records and reports relating to the investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth herein are based on investigation by federal special agents and local law enforcement officers, hereafter collectively referred to as "Agents." They are also based upon the undercover efforts of confidential sources and undercover agents.

4.       Probable cause exists to believe that the requested information will lead to evidence in support of offenses involving the possession of firearm(s), machineguns, not registered in the ATF National Firearms Registration and Transfer Record (NFRTR), in violation of Title 18 United States Code (U.S.C.), Section 922(o), and Title 26, U.S.C., Section 5861(d), engaging in the

EXHIBIT 1

business without a license (firearms), in violation of Title 18 U.S.C., Section 922(a)(1)(A), illegal transportation or receipt in state of residency of firearm purchased or acquired outside of state of residency, in violation of Title 18 U.S.C., Section 922(a)(3), transporting prohibited weapons without a license, in violation of Title 18 U.S.C., Section 922(a)(4), illegal importation of a firearm or ammunition, in violation of Title 18 U.S.C., Section 922(l), failure to register as a dealer, manufacturer, or importer, or to pay required tax, in violation of Title 26 U.S.C., Section 5861(a), receipt/possession of firearm made in violation of the National Firearms Act, in violation of Title 26 U.S.C., Section 5861(c), transfer of a firearm in violation of the National Firearms Act, in violation of Title 26 U.S.C. Section 5861(e), transport, delivery, or receipt of unregistered firearm, in violation of Title 26 U.S.C. Section 5861(j), receipt or possession of unlawfully imported firearm, in violation of Title 26 U.S.C. Section 5861(k), and conspiracy to commit these crimes, in violation of Title 18, U.S.C., Section 371, and conspiracy to commit money laundering in violation of Title 18 U.S.C. Section 1956(h), as well as the identification of individuals who are engaged in the commission of these offenses.

     5.     The information contained in this affidavit discusses the following term(s);

     a.     A machinegun is a firearm under the National Firearms Act (NFA), 26 U.S.C. § 5845(a). A machinegun is defined, in pertinent part, as "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b).

     b.     A Glock conversion device – commonly referred to as "Glock Switch" or "Glock Auto Sear" – is a part, or combination of parts, designed and intended for use in converting a semiautomatic Glock pistol into a machinegun (i.e. continuous

EXHIBIT 1

fire of available ammunition as long as the trigger is pressed); therefore, it is a "machinegun." The device operates by engaging the trigger bar to prevent it from limiting the weapon to firing only one round each time the trigger is pressed.

c.      A "Swift Link" is a part designed and intended solely and exclusively for use in converting a weapon into a machinegun, thus it is a "machinegun" as defined in 26 U.S.C. § 5845(b).

d.      The Gun Control Act, 18 U.S.C. § 922(o), prohibits the transfer or possession of a machinegun manufactured after May 19, 1986.

6.      Through my consultation with other agents in the ATF, your affiant is not aware of any Glock conversion devices that were developed before May 19, 1986. As such, Glock conversion devices are considered post-1986 machineguns. Therefore, they may only be lawfully possessed by properly licensed Federal Firearms licensees who have paid the appropriate Special Occupational Tax required of those manufacturing, importing, or dealing in NFA firearms under the authority of the United States and any department or agency thereof or a State or a department, agency, or political subdivision thereof; 18 U.S.C. § 922(o).

7.      For the reasons set out in this affidavit, there is probable cause to believe that the Target Offenses have been committed, are being committed, and/or will continue to be committed by A.B., G.A., Robilio CRUZ (hereinafter referred to as "CRUZ"), Alonso GONZALEZ (hereinafter referred to as "GONZALEZ"), Michael Perez RODRIGUEZ (hereinafter referred to as "RODRIGUEZ"), Dennis FERRER (hereinafter referred to as "FERRER"), Jefry Salgado VELASQUEZ (hereinafter referred to as "VELASQUEZ", AKA "Sharky"), David LIMONES-

ALMONTE (hereinafter referred to as "LIMONES") and others known and unknown (collectively the "Target Subjects").

8.  A review of FERRER's criminal history showed an active state warrant out of Tennessee for aggravated assault deadly weapon. *Note: FERRER may be prohibited from possessing firearms and ammunition in violation of Title 18, United States Code, Section 922(g)(2) being a fugitive from justice.*

## THE TARGET PREMISES

9.  This Affidavit and the accompanying application seek the issuance of a search warrant to search the residence of **4628 Long Branch, Antioch, Tennessee** (hereinafter referred to as the "**Target Premises**"). The **Target Premises** is associated to Dennis FERRER. The **Target Premise** is a multi-story, blue/gray sided home. Your affiant is requesting to search the residence, structures, and vehicles in the control of occupants.

10.  The **Target Premises** is located in the Middle District of Tennessee and is more fully described in Attachment A. I further request that the warrant permit a search for and seizure of the items of evidence listed in Attachment B.

## BACKGROUND OF THE INVESTIGATION

11.  This application is submitted in connection with an ATF, Rutherford County Sheriff Office (RCSO), and other agencies investigation of the Target Offenses. The investigation, through among other things, and the use of confidential informant (s) has revealed that A.B., G.A., CRUZ, GONZALEZ, RODRIGUEZ, VELASQUEZ, FERRER and/or LIMONES, associates and other Target Subjects are engaged in the Target Offenses1.

---

[1] The true name and identity of A.B. and G.A. are known to your Affiant.

5

EXHIBT 1

12.     On or about January 15, 2021, a confidential informant ("CI") indicated A.B. messaged the CI on an application called SnapChat and indicated the Glock switches were in and were $1,200 apiece. The CI responded to A.B. indicating he/she wanted a Glock switch. The CI indicated that approximately two months prior A.B. mentioned getting Glock switches from China.

13.     On January 20, 2021, ATF Agents and law enforcement with the Rutherford County Sheriff's Office (RCSO) met with the CI who arranged to purchase a Glock auto sear (AKA Glock switch) from A.B. for $1,200. The CI communicated with A.B. through a telephone number and SnapChat to arrange the meeting. The CI was issued covert recording and transmitting devices as well as law enforcement funds. Agents searched the CI's person and CI's vehicle before and after the controlled purchase and both were found to be free of contraband. Agents monitored the controlled purchase via visual surveillance and covert audio transmitter. During the encounter, A.B. explained that the Glock auto sear was in full auto mode and would empty a 33-round magazine in 2.2 seconds. While discussing the Glock auto sear, A.B. explained, getting caught is a mandatory 7 to 8 years in prison. Following the controlled purchase, the CI provided Agents with a suspected Glock auto sear.

14.     The purchased Glock auto sear was sent for analysis/determination by ATF's Firearms Technology Criminal Branch (FTCB/FATD). The technical examination report indicated the exhibit "…in and of itself, is a combination of parts designed and intended for use in converting a weapon into a machinegun; therefore, Exhibit 1 is a "machinegun" as defined in 26 U.S.C. § 5845(b)", "Exhibit 1 is also a "machinegun" as defined in 18 U.S.C. § 921(a)(23)", "Being a machinegun, Exhibit 1 is also a "firearm" as defined in 26 U.S.C. § 5845(a)(6)" and "Exhibit 1

6

EXHIBIT 1

bears no NFA manufacturer's marks of identification or serial number as required by 26 U.S.C. § 5842."

15.     On March 8, 2021, the CI advised that the shipment of Glock auto sears may have arrived. Agents with ATF conducted a controlled call with A.B. to confirm the status of the Glock auto sears that were due to arrive. The CI asked if the switches would be available this week. During the call, A.B. explained his source said to be ready for them, so A.B. assumed it would be soon. On March 11, 2021, A.B. contacted the CI and indicated the switches had arrived.

16.     On March 12, 2021, Agents with ATF met with a CI, who had arranged to purchase five Glock auto sears (AKA Glock switches) from A.B. and A.B.'s associates for $5,000. The CI was issued covert recording and transmitting devices as well as law enforcement funds. Agents searched the CI's person and CI's vehicle before and after the controlled purchase and both were found to be free of contraband. Agents with ATF and other law enforcement monitored the controlled purchase via visual surveillance and covert audio transmitters.

17.     The CI picked A.B. up in Murfreesboro, Tennessee, and A.B. directed the CI to drive to the Publix located in Antioch, Tennessee. At Publix, A.B. collected $5,000 from the CI. A.B. exited the vehicle and got into a gray Mitsubishi occupied by two additional subjects. The subjects were later identified as G.A. and CRUZ. The CI followed A.B., G.A., and CRUZ in a vehicle registered to G.A. and someone related to G.A. G.A. drove the Mitsubishi and the occupants to meet with the occupants of a black in color Audi sedan whose registered owner is GONZALEZ. After a brief interaction, G.A. returned to the Mitsubishi with the Glock auto sears. The Mitsubishi occupied by G.A., CRUZ, and A.B. then drove to a nearby gas station. A.B. exited the Mitsubishi and gave the CI five suspected Glock auto sears (AKA Glock switches). During the

7

EXHIBIT 1

encounter, A.B. explained to the CI that the subject in the Audi was the "plug"2. A.B. explained that the two other subjects in the Mitsubishi were middle-men.

18.     On March 30, 2021, a CI sent G.A. a message on SnapChat inquiring if G.A. could get another switch. G.A. responded, "Lemme ask him if he got more". On March 31, 2021, the CI shared that G.A. told the CI the next shipment would be here in two to three weeks and that the Glock switches were coming from Houston, Texas.

19.     On May 25, 2021, ATF agents met with a CI who arranged to purchase six (6) Glock auto sears (AKA Glock switches) from G.A. for $700 apiece. The CI communicated with G.A. through SnapChat to arrange the meeting. The CI was issued covert recording and transmitting devices as well as law enforcement funds. Agents searched the CI's person and CI's vehicle before and after the controlled purchase and both were found to be free of contraband. Agents and law enforcement monitored the controlled purchase via visual surveillance and covert audio transmitter. The CI met with G.A. at a location in Antioch, Tennessee. The CI provided G.A. with $4,200 in exchange for the Glock auto sears. During the encounter, G.A. discussed suppressors. G.A. showed the CI videos on SnapChat with possible names of Alex/Alexander Rodriguez, Sharky and RealG$. The videos depicted suppressors, marijuana and Glock switches. Following the controlled purchase, the CI provided agents with six (6) suspected Glock auto sears.

20.     On February 23, 2022, Agents and local law enforcement were conducting surveillance in the area of GONZALEZ's residence located on Lutie Street in Nashville, Tennessee. An ATF Agent observed a subject matching the physical description of GONZALEZ

---

2 "Plug" is a commonly used word amongst dealers and purveyors of illicit items, which means that the individual identified as a "plug" serves as the source of supply for various illegal items or substances.

EXHIBIT 1

exit the residence and get into the driver's seat of a white BMW registered to GONZALEZ. Probable cause was established to conduct a traffic stop on the vehicle, believed to be occupied by GONZALEZ (driver) and an unknown female (passenger), after GONZALEZ was observed making several traffic violations. Note: GONZALEZ driver's license status also showed suspended. Law enforcement attempted to conduct a traffic stop on the vehicle driven by GONZALEZ, however the vehicle fled from law enforcement at a high rate of speed. Law enforcement did not pursue the vehicle. Your affiant has been informed that a state arrest warrant was issued for GONZALEZ.

21.      During a concurrent investigation, an ATF undercover agent communicated with Foxtrot Tactical Shop. On or about March 16, 2022, the undercover agent purchased forty suspected Glock switches from Foxtrot Tactical Shop. On the invoice provided by Foxtrot Tactical Shop to the undercover agent the email address of foxtrotairsoftshop@gmail.com was listed. The item description was listed as "Keychain". The suspected Glock switches were subsequently delivered via DHL to the undercover agent.

22.      Your affiant has reviewed information from ATF's National Firearms Act (NFA) Division Government Support Branch that there were **no** records related to G.A., A.B., CRUZ, GONZALEZ, VELASQUEZ, RODRIGUEZ or FERRER within the National Firearms Registration and Transfer Record (NFRTR). **According to Title 26 United States Code, Section 5841, the NFRTR is: "***the central registry of all NFA firearms in the U.S. which are not in the possession or under the control of the U.S. Government." The registry includes (1) the identification of the firearm, (2) date of registration, and (3) identification and address of the person entitled to possession of the firearm* **(***the person to whom the firearm is registered).*

9

Furthermore, Title 26 United States Code, Section 5861(d) states: "It shall be unlawful for any person – to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record…"

## MoneyGram Information

23.     On or about April 15, 2021, December 14, 2021, and March 23, 2022, MoneyGram provided records pursuant to grand jury subpoenas related to Alonso GONZALEZ and phone number (615) 584-2601. The transactions records list the sender's name, phone number, DOB (date of birth) and ID number. GONZALEZ and his associated identifiers are listed including his phone number of (615) 584-2601.  The results showed transactions where GONZALEZ sent money to a subject by the name of David Alejandro LIMONES-ALMONTE (hereinafter referred to as "LIMONES"). The transactions listed an address for LIMONES in Torreon, Mexico, and a phone number of (871) 453-0525. The results showed several transactions from around December 1, 2020, through around October 23, 2021, where GONZALEZ sent money to LIMONES in Mexico. The most recent transaction known to your affiant involving GONZALEZ occurred on or about February 1, 2022, where GONZALEZ sent approximately $940 to Mexico.

24.     On or about December 22, 2021, March 9, 2022, and August 5, 2022, MoneyGram provided records pursuant to grand jury subpoenas related to Michael Perez RODRIGUEZ and phone number of (615) 582-7456. The transactions records list the sender's name, phone number, DOB (date of birth) and ID number. RODRIGUEZ and his associated identifiers are listed including his phone number of (615) 582-7456. The results showed several transactions from around December 1, 2020, through around June 1, 2022, where RODRIGUEZ sent money to LIMONES in Mexico.

10

25.     On or about March 11, 2022, MoneyGram provided records pursuant to grand jury subpoenas related to Dennis FERRER. The transactions records list the sender's name, phone number, DOB (date of birth), and ID number. FERRER and his associated identifiers are listed including his phone numbers of (615) 290-7744 and (323) 713-5848. The results showed several transactions from around December 1, 2020, through around February 2, 2022, where FERRER sent money to LIMONES in Mexico.

26.     On or about December 6, 2021, MoneyGram provided records pursuant to a grand jury subpoena related to David LIMONES-ALMONTE. The results showed the above-mentioned transactions with RODRIGUEZ, GONZALEZ, and FERRER.

27.     Pursuant to Federal Search Warrants issued by this court for Google accounts associated with the email addresses of dalamonte93@gmail.com and foxtrotairsoftshop@gmail.com records were located including DHL shipment receipts, DHL email delivery notifications, photographs depicting shipping labels and suspected Glock auto sears/swift links. A review of this information located was compared to the above-mentioned MoneyGram transactions where GONZALEZ, RODRIGUEZ, and FERRER sent money to LIMONES in Mexico.

28.     The results showed that on or about December 1, 2020, GONZALEZ sent approximately $600 and $950 to LIMONES via MoneyGram, RODRIGUEZ sent approximately $950 to LIMONES, and FERRER sent approximately $1,500 to LIMONES. A DHL shipment receipt with a date of December 15, 2020, was located with a receiver address located in Antioch, Tennessee, the description of contents was listed as "Other-Other articles of aluminum". An DHL email delivery today notice was located for December 17, 2020.

11

EXHIBIT 1

29.     On or about December 30, 2020, and January 4, 2021, FERRER sent approximately $1,000 and $670 to LIMONES via MoneyGram. A DHL shipment receipt was located with a date of January 5, 2021, with a receiver address listed as an address on Lutie Street, located in Nashville, Tennessee (*this address has been linked to GONZALEZ*). An DHL email notification was located. *The controlled purchase mentioned above was on January 20, 2021.*

30.     The results showed that on or about February 14, 2021, GONZALEZ sent approximately $2,400 to LIMONES. On or about March 6, 2021, GONZALEZ sent approximately $800 to LIMONES in Mexico. The transaction was within a week before the CI was notified that the Glock auto sears arrived on March 11, 2021 (*a day before the controlled purchase on March 12, 2021*). A DHL shipment receipt was located with a date of March 8, 2021, with a receiver address listed as an address on Lutie Street, located in Nashville, Tennessee. An DHL email delivery notification was located for March 11, 2021.

31.     On or about April 7, 2021, GONZALEZ and RODRIGUEZ sent money to LIMONES. On or about April 20, 2021, GONZALEZ sent additional money to LIMONES. A DHL shipment receipt was located with a date of April 22, 2021, the receiver address listed as the address on Lutie Street, located in Nashville, Tennessee. A related DHL delivery notification was located. Also, on or about April 28, 2021, RODRIGUEZ sent additional money to LIMONES and a DHL shipment receipt was located with a date of April 30, 2021.

32.     On or about May 17, 2021, RODRIGUEZ sent approximately $400 to LIMONES and FERRER sent approximately $2,000 to LIMONES (*this is approximately a week before the controlled purchase on May 25, 2021*). A DHL shipment receipt was located with a date of May 20, 2021, the receiver address listed as the address on Lutie Street. On or about May 25, 2021,

12

EXHIBIT 1

RODRIGUEZ sent additional money to LIMONES and a DHL shipment receipt was located with a date of May 26, 2021.

33.     On or about May 31, 2021, RODRIGUEZ, GONZALEZ, and FERRER all sent money to LIMONES via MoneyGram. A DHL shipment receipt was located for June 1, 2021, with the receiver address listed as the address on Lutie Street. On or about June 3, 2021, GONZALEZ sent money to LIMONES. On or about June 8, 2021, RODRIGUEZ sent money to LIMONES and on or about June 9, 2021, GONZALEZ and FERRER sent money to LIMONES. A DHL shipment receipt and DHL delivery notification was located.

34.     On or about July 13, 2021, FERRER sent money to LIMONES. A DHL shipment receipt and DHL delivery notification was located.

35.     On or about October 16, 2021, RODRIGUEZ sent approximately $1,000 to LIMONES. On or about October 21, 2021, FERRER sent approximately $1,000 to LIMONES. A transaction showed GONZALEZ sent approximately $1,300 to LIMONES on or about October 23, 2021 (*three days before the DHL shipment mentioned below was sent from Torreon, Mexico, to Nashville, Tennessee*). A DHL shipment receipt was located.

36.     On or about November 18, 2021, RODRIGUEZ and FERRER sent money to LIMONES. A DHL shipment receipt and related email delivery notification was located. On or about December 16, 2021, FERRER sent money to LIMONES. A DHL shipment receipt was located with a date of December 17, 2021. On or about February 2, 2022, FERRER sent money to LIMONES. On or about February 3, 2022, RODRIGUEZ sent money to LIMONES. A DHL shipment receipt with a date of February 8, 2022, with a receiver address listed as the address on

13

EXHIBIT 1

Lutie Street, located in Nashville, Tennessee, was located. An DHL email delivery notification was located for February 11, 2022.

<u>**Surveillance**</u>

37.     Your affiant reviewed surveillance footage for May 24, 2021, in reference to the above-mentioned MoneyGram transactions, and receipt documents mentioned above for the address located on Lutie Street (associated to GONZALEZ). A subject is observed delivering a package to the residence, a short time later a subject matching the physical description of GONZALEZ retrieves the package. The package matched the description of what a DHL package looks like. Later the same day a black BMW (RODRIGUEZ is associated to a black BMW) arrives at the residence. GONZALEZ was observed getting into the BMW. On May 25, 2021, a subject matching the physical description of FERRER was observed arriving at the Lutie Street address in a black Audi with Tennessee license plate, 3T51S7. GONZALEZ and FERRER met with other subjects and exchanged items. *Note: This is the same day as the controlled purchase of six Glock auto sears occurred as mentioned above.*

38.     Your affiant reviewed surveillance footage for June 4, 2021, in reference to the above-mentioned MoneyGram transactions, receipt, and DHL delivery today notice related documents mentioned above for the address located on Lutie Street (associated to GONZALEZ). A subject is observed delivering a package. A short time later, a vehicle appearing to be a black BMW pulls into the driveway. A male matching the physical description of GONZALEZ exits the passenger side of the vehicle and retrieves the package.

39.     Your affiant reviewed surveillance footage for July 19, 2021, in reference to the above-mentioned MoneyGram transactions, receipt and DHL delivery today notice related

14

EXHIBIT 1

documents mentioned above for the address located on Lutie Street (associated to GONZALEZ). A subject is observed delivering a package to the mailbox. A short time later, a subject matching the physical description of GONZALEZ arrives at the residence and retrieves the package.

40.     On or about March 14, 2022, the ping location data obtained from a federal search warrant issued by this court for T-Mobile for the phone number of (323) 713-5848 (associated to FERRER) showed in the area of the **Target Premises**. Your affiant observed a black in color Audi with Tennessee license plate, 3T51S7, registered to Alonso GONZALEZ, in the driveway.

41.     From around July 21, 2022, through August 4, 2022, your affiant reviewed surveillance footage of the **Target Premises**. Your affiant observed a male subject matching the physical description of FERRER on multiple occasions leave the residence in the black Audi mentioned above.

## Facebook Information

42.     A Facebook page under the name "Foxtrot Tactical Shop" was discovered by agents working on this investigation. The page indicates it is an Outdoor Equipment Store stating it is an online store of tactical and sports articles for outdoor activities. The Facebook page lists the phone number of +52 871-453-0525 (*this is the phone number listed on the Money Gram information for LIMONES*) in the about section. The Facebook page indicates connections to YouTube, Instagram and WhatsApp accounts. The Facebook page depicted a post of a photograph with the name of David Almonte.

15

EXHIBIT 1



43.    Upon reviewing the Facebook page ATF agents noted numerous photographs of what appeared to be gold and black Glock auto sears (AKA Glock switches). Agents also noted photographs containing suspected counterfeit logos. Agents noted there were videos depicting how pistols and rifles operated with Glock auto sears (AKA Glock switch) or a swift link3 installed.

---

3 A Swift-Link is designed so that the rear take-down pin lug in an AR-type firearm receiver acts as a fulcrum point and holds the device in place within the fire-control cavity. When an M16-type bolt carrier strikes the top of the- device as it moves forward into battery, the front portion of the device moves down, thereby pushing down on the disconnector and releasing the hammer from under the disconnector hook. As long as the trigger is held back, the rearward movement of the bolt carrier will cock the hammer under the disconnector hook. The forward movement of the bolt carrier will strike the top portion of the device just as the bolt locks in battery, automatically

ATF agents observed a post which contained a link to a quick guide to identify an AR for swift link compatibility.



44.     On November 6, 2021, Foxtrot Tactical Shop made a post on the Facebook page stating, "Order shipped to our customer in Tennessee". A photograph was attached to the post which appeared to depict numerous suspected Glock auto sears (AKA Glock switches), swift link and a shipping label which showed the destination as Nashville, Tennessee, from Worldwide WPX (*the label appeared to be a DHL label*). Utilizing the online website https://www.dhl.com to track the DHL package a possible tracking number was identified for the package. The results showed the package was shipped from Torreon, Mexico, on October 26, 2021, and delivered on October

---

releasing the hammer and firing the weapon. This causes the AR-type firearm to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

17

28, 2021, to Nashville, Tennessee. Pursuant to a grand jury subpoena for DHL regarding the shipment the results showed the sender of the package was "Edwin Williams" (with an email address of FOXTROTAIRSOFTSHOP@gmail.com and phone number of +528714530525) and the receiver was "Alonso Rivas" with a phone number of (323) 713-5848 (*this is the phone number listed on the MoneyGram transactions for Dennis FERRER*), the recipient address was an address on Lyle Lane located in Nashville, Tennessee. From another photograph of a shipment utilizing the DHL label depicted utilizing the online DHL website ATF agents located results which showed a package was shipped from Torreon, Mexico, on October 20, 2021, and delivered on October 25, 2021, to Milwaukee, Wisconsin.



45. Your affiant also noted numerous other posts/photographs of what appeared to be DHL shipping labels to locations in Texas, California, Puerto Rico, Pennsylvania, Massachusetts, Florida, and other locations throughout the United States. Your affiant noted photographs posted

18

with suspected Glock auto sears as far back as July 2019, including a photograph posted in December, 2019, depicting a shipping label with a destination listed as Lebanon, Tennessee.



46. Your affiant noted that on or about January 21, 2022, on the Facebook page there was a post made by Foxtrot Tactical Shop which said "…free domestic shipping international shipping available… Secure payment methods PayPal, Mercadopago and direct payments to BBVA account, western union, moneygram, remitly. Color black and gold".

47. On the above-mentioned Facebook page, a hyperlink was located, https://www.instagram.com/foxtacshopmx/, the hyperlink was linked to an Instagram page under the name *foxtacshopmx*. Upon reviewing the Instagram page your affiant noted numerous photographs and videos of what appeared to be gold and black Glock auto sears (AKA Glock switches). Your affiant also noted photographs containing suspected counterfeit logos. Your affiant noted there were videos depicting how pistols and rifles operated with Glock auto sears (AKA Glock switch) or a swift link installed. Your affiant noted photographs of suspected Glock auto sears posted as far back as January 30, 2020.

19





20

EXHIBIT 1

48.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Instagram is owned by Facebook and can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device and is sometimes shared with the general public. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

49.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number and/or vanity name to each account.

## Additional Phone Owner Identification

50.     On or about November 19, 2021, T-Mobile provided records pursuant to a grand jury subpoena related to the (323) 713-5848. The results did not show a name or address listed for the subscriber of the active phone number. The results show numerous phone contacts between Dennis FERRER's phone (323) 713-5848, GONZALEZ's phone number of (615) 584-2601, and RODRIGUEZ' phone number of (615) 582-7456.

21

EXHIBIT 1

**Use of Electronic Devices**

51.     Based upon my training and experience, I know that persons involved in offenses related to firearms trafficking related offenses, acquisition, dealing, transporting, possession, sale, distribution, and/or manufacture of firearms, machineguns, firearm parts, conspiracy to commit these related crimes, money laundering, and related crimes commonly use their cellular devices to do the following:

a.     Maintain records and other data from various forms of communication related to their sale, acquisition, dealing, and/or distribution of firearms, firearm parts, and related items from those sales;

b.     Discuss and negotiate their sales and acquisition of firearms/firearm parts via telephone calls and text messages, applications, social media platforms/applications such as What's App, Facebook, Instagram and many others, internet websites, and keep phone numbers of their co-conspirators within their cellular phones. Those individuals also frequently keep a list of names and numbers of customers and suppliers in the electronic address books within their cellular telephones;

c.     Generate, transfer, count, record and/or store records, invoices, receipts, bank statements, and other related records;

d.     Maintain addresses and telephone numbers of their co-conspirators; and

e.     Store photographs/videos of themselves, their co-conspirators, and their property, including photographs/videos of firearms, firearm parts, and proceeds from the sale or acquisition of those firearms and firearm parts.

22

EXHIBIT 1

52.     Additionally, based upon my training and experience, I know that persons who are involved in the acquisition, importation, dealing, transportation, possession, sale, and distribution of firearms, and money laundering and who conspire to do so, often possess multiple electronic devices at once. For example, they often use different phones to speak with their respective suppliers/customers/other co-conspirators in order to make it more difficult for law enforcement to intercept their calls and messages. They also often will use a rotation of different cell phones for that same reason.

53.     Finally, in my training and experience, examining data stored on electronic devices can uncover, among other things, evidence that reveals or suggests who possessed or used the device and where they travelled with the electronic device.

## CONCLUSION

54.     Based upon the foregoing facts and circumstances, my training and experience, to include subjects trafficking, acquiring, illegally importing, distributing, and possessing firearms and firearm parts typically conceal these firearms and firearm related items, ledgers, proceeds, and related acquisition/distribution type materials in conspicuous/concealed locations on the properties they maintain. Cash proceed are often maintained, concealed within the living quarters of subjects selling, dealing, distributing firearms and firearm related items to avoid the cash from being stolen.

55.     FERRER's phone number listed in the MoneyGram transactions used to facilitate transactions to purchase and illegally import the illegal machineguns (Glock auto sears/AR-conversion devices) location data has pinged in the area of the **Target Premises**. A subject matching the physical description of FERRER has also been identified during surveillance leaving the residence in the black Audi.

EXHIBIT 1

56.     Due to the fact that FERRER and/or co-conspirators have been sending money to LIMONES via MoneyGram for over a year and most recently in June, 2022, and based on all the facts stated above, I believe probable cause exists that relevant items in Attachment B, including evidence and property designed for use, intended for use, and used in committing the criminal offenses of violations involving the possession of firearm(s), machineguns, not registered in the ATF National Firearms Registration and Transfer Record (NFRTR), in violation of Title 18 United States Code (U.S.C.), Section 922(o), and Title 26, U.S.C., Section 5861(d), engaging in the business without a license (firearms), in violation of Title 18 U.S.C., Section 922(a)(1)(A), illegal transportation or receipt in state of residency of firearm purchased or acquired outside of state of residency, in violation of Title 18 U.S.C., Section 922(a)(3), transporting prohibited weapons without a license, in violation of Title 18 U.S.C., Section 922(a)(4), illegal importation of a firearm or ammunition, in violation of Title 18 U.S.C., Section 922(l), failure to register as a dealer, manufacturer, or importer, or to pay required tax, in violation of Title 26 U.S.C., Section 5861(a), receipt/possession of firearm made in violation of the National Firearms Act, in violation of Title 26 U.S.C., Section 5861(c), transfer of a firearm in violation of the National Firearms Act, in violation of Title 26 U.S.C. Section 5861(e), transport, delivery, or receipt of unregistered firearm, in violation of Title 26 U.S.C. Section 5861(j), receipt or possession of unlawfully imported firearm, in violation of Title 26 U.S.C. Section 5861(k), and conspiracy to commit these crimes, in violation of Title 18, U.S.C., Section 371, and/or conspiracy to commit money laundering in violation of Title 18 U.S.C. Section 1956(h) will be found inside the **Target Premises** to include the curtilage described herein. There is also probable cause that evidence supporting the crimes under investigation will be located on the devices utilized by FERRER, including the cellular

telephone(s) utilized by FERRER. I therefore request that a search warrant be issued to search for and seize from the **Target Premises** and the curtilage for the items described in Attachment B.

## <u>REQUEST FOR SEALING</u>

57.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal activities of the individual and potential organizations, and not all of the potential targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, criminals actively search for information, including criminal affidavits and search warrants via the internet, and disseminate them to others as they deem appropriate (including by posting them publicly online through various forums). Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

EXHIBIT 1